**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| MARSHA M. AARON | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:10-CV-139 (WLS) |
| | : | |
| BOARD OF REGENTS OF THE | : | |
| UNIVERSITY SYSTEM OF GEORGIA | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Presently before the Court is Defendant Board of Regents of the University System of Georgia's Motion to Strike (Doc. 53) and Motion for Summary Judgment (Doc. 35.)  For the following reasons, Defendant's Motion to Strike is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

## PROCEDURAL BACKGROUND

Plaintiff Marsha M. Aaron filed her initial complaint in the above-captioned matter on October 8, 2010, asserting claims under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. §2000(e), *et seq.*, (hereinafter "Title VII") for retaliation, race discrimination, sex discrimination, and hostile work environment.  (Doc. 1.)  On December 17, 2011, the Court entered an Order dismissing Plaintiff's complaint for lack of jurisdiction since the claims asserted in its view, were identical to those alleged in *Aaron v. Board of Regents of the University System of Georgia, et al.,* No. 1:08-cv-067-WLS (M.D. Ga. Aug. 30, 2010) (hereinafter "*Aaron I*"), which was dismissed by the Court with prejudice pursuant to Fed. R.

1

Civ. P. 41(a)(1)(A)(ii). (Doc. 2.) On March 1, 2011, Plaintiff moved the Court to reconsider her complaint, contending the claims raised in her present complaint were not excluded in the parties' settlement agreement concluding *Aaron I*. (Doc. 6.) On April 27, 2011, the Court noted "it appears that Plaintiff's instant case is barred by the doctrine of res judicata" but in an abundance of caution, viewing the evidence in the light most favorable to the Plaintiff, it would reconsider her claims and allow Plaintiff to amend her complaint. (Doc. 7.) The Court also noted that granting reconsideration of Plaintiff's amended complaint "is in no way indicative of any future findings, and shall carry no precedential value." (Doc. 7, at 4.)

On March 29, 2012, Plaintiff filed her amended complaint in the above-captioned matter again asserting the same claims under Title VII against Defendant as principal for Albany State University ("ASU"): retaliation, race discrimination, sex discrimination, and hostile work environment. (Doc. 12.) On December 10, 2012, Defendant answered Plaintiff's complaint. (Doc. 18.) On December 20, 2012, Defendant brought the present Motion for Summary Judgment as to Plaintiff's complaint. (Doc. 35.) According to Defendant, Plaintiff's discrimination claim fails for the following reasons: (1) Plaintiff's claims are time-barred; (2) Plaintiff fails to establish a *prima facie* case for retaliation, race discrimination, sex discrimination, and hostile work environment; and (3) Plaintiff's hostile work environment claim is barred by collateral estoppel. (Doc. 35-1, at 5.)

On January 2, 2014, in accordance with the Court's procedures governing notice to *pro se* plaintiffs, the Court issued an order directing Plaintiff to file a response by January 23, 2014, in opposition to Defendant's Motion. (Doc. 37.) Plaintiff was noticed, pursuant to the procedures and policies of the Court, that motions were normally decided on briefs. (*Id.* 37, at 1.) Additionally, Plaintiff was notified of the requirement to respond in opposition to Defendant's Motion with "affidavits, depositions, documents" and rely with specificity upon evidence that is part of the Record. (*Id.*, at 2.) Plaintiff was also reminded, "[i]f a party fails or refuses to file any materials in opposition to a motion for summary judgment, a **FINAL**

judgment may be rendered against that party if otherwise appropriate under the law.  In that event, <u>there would be no trial or any further proceedings</u>." (*Id.*) (emphasis added.)  Plaintiff's first response was not filed until January 23, 2014, five days past the Court's established deadline.  (Doc. 38.)  On February 10, 2014, Plaintiff then requested leave to file a later response to the Defendant's Motion for Summary Judgment.  (Doc. 42.)  On February 12, 2014, as a result of Plaintiff receiving an unauthorized extension, Plaintiff was allowed to file a response no later than February 17, 2014.  (Doc. 43.)  The Court also made abundantly clear "no further extensions will be granted except to prevent manifest injustice, and, in that regard, only upon timely written motion to the Court." (*Id.*, at 2.)  On Friday 18, 2014, a day later than ordered, the Court received Plaintiff's response.  On March 3, 2014, along with filing its Reply, (Doc. 52.), Defendant also filed a Motion to Strike Plaintiff's Response. (Doc. 53.)  Plaintiff replied to Defendant's Motion to Strike on March 13, 2014.  (Doc. 55.)

## DISCUSSION

### I.  Defendant's Motion to Strike

As a preliminary matter, Defendant moved to strike Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 45.)  Defendant moves to strike Plaintiff's Response since it was filed on February 18, 2014, a day later than ordered by the Court.  Plaintiff, in her response to Defendant's Motion to Strike, suggests her failure to timely file was due to technical difficulties.  (Doc. 55.)  Per Plaintiff, technical difficulties with filing her response remained unresolved on February 17, 2014 since it was a federal holiday and there was no assistance available from the Court as a result of the Clerk's Office closure.  (Doc. 55.)

Plaintiff's continual failure to abide by the Court's ordered deadlines is troubling.[1] Parties are responsible for following the Court's orders, or alternatively, making the Court aware of its inability to meet the requisite deadline.  Nevertheless, the Court is given broad

---

[1] The Court notes for the record Plaintiff was untimely in filing her Amended Complaint, twice not meeting the deadline. (*See* Doc. 11.) Plaintiff was also untimely, as Defendant's note, in filing her Response in Opposition to Summary Judgment twice as well. In each instance, Plaintiff did not follow the Court's Order.

discretion in deciding how to best manage cases before it.  *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1366 (11th Cir. 1997).  In interest of best evaluating Defendant's Motion for Summary Judgment on the merits, and as result of Plaintiff's plausible yet questionable explanation for filing her response a day late and following an official holiday, the Court will consider Plaintiff's Response.  Accordingly, Defendant's Motion to Strike is **DENIED**. (Doc. 53.)

## II. Defendant's Summary Judgment Motion

### A. Summary Judgment Standard

#### a. <u>Federal Rule of Civil Procedure 56</u>

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Chow v. Chak Yam Chau*, No. 12-15994, 2014 WL 92094, *3 (11th Cir. Jan. 10, 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009).  The movant can meet this burden by presenting evidence showing there is no genuine dispute of material

fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsuhita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### b. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in

respondent's statement shall be deemed to have been admitted, unless
otherwise inappropriate.

M.D. Ga. L.R. 56.  Here, Defendant properly filed a summary judgment motion with a
statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the
Local Rules of this Court. Plaintiff, while tardy, eventually filed a responsive statement of
facts as well. Having established the applicable standards, the Court will proceed with
reviewing the Motion's merits.

### B. Relevant Factual Background[2]

Plaintiff, an African-American female, began her employment at ASU, part of the
University System of Defendant, in the fall of 1997 as Communications Manager in the
Office of Public Information Services ("OPI").  (Doc. 35-2, at ¶1.)  In August 2003, after
serving in various positions within ASU's OPI, Plaintiff was named Director of OPI.  (*Id.*, at
¶2.)  As Director, Plaintiff was responsible for developing and managing communication
strategies and programs in support of the ASU's goals and objectives.  (*Id.* at ¶3.)

OPI, during various periods, reported directly to ASU's President.  (*Id.,* at ¶4.)  However,
for a considerable amount of time when Plaintiff was employed by ASU, OPI was housed
under the Division of Institutional Advancement, led by the Vice President of Institutional
Advancement.  (*Id.*)

On August 1, 2005, Dr. Everette Freeman ("Freeman"), a then 58 year-old African-
American male was appointed President of ASU.  (*Id.* at ¶5.)  In his capacity as President,
amongst other tasks, Freeman was expected to correct state audits, lead the University
through the Southern Association of Colleges and School ("SACS") accreditation process,

---

[2] The following facts are derived from the Amended Complaint (Doc. 12.); Defendant's Statement of
Undisputed Facts (Doc. 35-2); Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. 38);
Defendant's Reply to Plaintiff's Reply to Defendant's Statement of Undisputed Facts (Doc. 51); and the
record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived
from pleadings, the discovery and disclosure of materials on file, and affidavits, all of which are construed in
the light most favorable to the Plaintiff as the nonmoving party.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,*
477 U.S. 317, 323 (1986).

and ensure ASU operated in an efficient, effective manner.   (*Id.*)   Soon after his appointment, Freeman grew increasingly frustrated with Plaintiff's performance as Director. (*Id.* at ¶6.)   It was immediately apparent Freeman and Plaintiff had differing views on the role of the Director of OPI.   Freeman expected Plaintiff, as Director, to present him with a public relations plan and strategy to introduce him as the new ASU President, but allegedly was not contacted by Plaintiff for several weeks after his appointment. (*Id.*)   In contrast, Plaintiff claims she fulfilled her responsibilities according to Defendant's protocol when Freeman was appointed. (Doc. 39, at ¶6.)

The rift between Freeman and Plaintiff only heightened as time went on.   Freeman contends Plaintiff failed to timely accomplish administrative tasks, waited until the very last minute to submit requested documents, in some instances failed to submit assignments altogether, and was limited in her writing ability.  (Doc. 35-2, at ¶¶6-7.)  Plaintiff, taking a different view, took issue with what she characterizes as inexperience by Freeman in dealing with personnel.   (Doc. 39, at ¶¶6-8.)   Often, Plaintiff contends, she would receive assignments at the last minute and be blamed for not completing tasks her department was not assigned.   Further, Plaintiff claims she drafted and edited several documents for Freeman with no objection or criticism and was unaware he was dissatisfied with her writing ability. (*Id.*)

To resolve tensions between Freeman and Plaintiff, both parties agreed to consider different capacities in which Plaintiff could serve ASU.  (Doc. 35-2, at ¶8.)  Plaintiff worked with ASU's Human Resources ("HR") Director, African-American Steve Grant ("Grant"), to pursue another position.  (*Id.*, at ¶12.)  On March 21, 2006 and March 29, 2006, Plaintiff met with Grant and both parties agreed her transition to another position should take place after ASU's graduation.   (*Id.*, at ¶13.)   Plaintiff's preferred position was the Director of Admissions and Recruitment, but Grant believed she was unqualified for that role.   (*Id.*, at ¶14.)  Throughout the time Plaintiff looked for a new position, she maintained her position as Director of OPI, further straining her relationship with Freeman.   (*Id.*, at ¶16.)

On May 1, 2006, Plaintiff submitted to Grant a grievance alleging hostile work environment caused primarily by Freeman and also filed a complaint with the EEOC under Title VII based on hostile work environment, race discrimination, and gender discrimination claims.  (*Id.*, at ¶17; Doc. 39, at ¶25.)  Grant forwarded Plaintiff's grievance to Defendant, who appointed Assistant Vice President at Georgia State University ("GSU"), Linda Nelson ("Nelson"), to conduct an investigation into Plaintiff's grievance.  (*Id.*, at ¶18.)  After interviewing Plaintiff and Freeman, Nelson found no discriminatory basis for Plaintiff's hostile work environment claim.  (*Id.*)  Seven days after submitting her grievance and EEOC claim, on May 8, 2006, Grant made a formal offer to Plaintiff for the TV/Radio Producer-Director position and delivered a letter informing Plaintiff that Carlton Fletcher, a Caucasian male, would be reassigned as Assistant Director of OPI.  (*Id.*, at ¶20.)  Plaintiff was also told she would be placed on a sixty day performance improvement plan ("PIP") to review her performance.  (*Id.*, at ¶20.)  Plaintiff initially refused ASU's job offer, viewing it as a demotion, but considered after salary negotiations and accepted the job offer.  (*Id.*, at ¶22.)

After sending her EEOC claim on May 1, 2006 and receiving EEOC's receipt of her "initial correspondence", she received word that the EEOC lost her initial complaint Plaintiff claims.  (Doc. 39, at ¶ 27; Doc. 12-1; Doc. 12-2.)  In December 2006, Plaintiff added retaliation as part of her complaint as a result of her demotion in May 2006.  (*Id.*)  On February 2, 2007, Plaintiff's Title VII complaint form was marked as received by the EEOC. (Doc. 12-3; Doc. 35-33.)

In May of 2007, after changing positions, Plaintiff was fired by ASU upon a recommendation from a hired consultant suggesting the position Plaintiff held was no longer necessary, Defendant's allege.  (Doc. 35-18, 94 at ¶13-19.)  On December 21, 2007, as a result of being fired, Defendant then filed a second EEOC claim, alleging her position was eliminated as a result of having filed her first EEOC claim.  *Aaron I*, at 11.  Specifically, Plaintiff contended her request to remain employed for the purpose of vesting into the Teacher's Retirement system was denied as a result of retaliation.  *Id.*

8

On March 3, 2010, this Court considered Defendant's Motion for Summary Judgment in *Aaron I*, and granted-in-part and denied-in-part Defendant's Motion.  On August 30, 2010, the Court granted the Parties' stipulation in *Aaron I*, voluntarily dismissing the Plaintiff's complaint in that matter with prejudice.

### C. Analysis

Defendant moves for summary judgment on three grounds.  First, Defendant argues Plaintiff failed to timely file her discrimination charge with EEOC and is thus barred from raising the current action.  Second, Defendant contends Plaintiff's hostile work environment claim is barred by collateral estoppel.  Third, Defendant argues Plaintiff fails to make a *prima facie* case for retaliation, race and gender discrimination, and hostile work environment.  The Court will consider each argument in turn.

### a.  Timeliness of Plaintiff's EEOC Charges

Defendant contends Plaintiff failed to file her claim with EEOC within 180 days of the alleged discriminatory action, and as a result should be barred from bringing this action before the Court.

A plaintiff bringing suit under Title VII must first exhaust all administrative remedies by filing a timely charge of discrimination with EEOC.  *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).  In Georgia, a non-deferral state, plaintiffs are required to first file their Title VII discrimination charge(s) within 180 days of the unlawful employment action.  42 U.S.C. § 2000(e)-5(e)(1).  The 180 day limitations period begins when an employee receives notice of an adverse action.  *Kelly v. Dun & Bradstreet Corp.*, 457 Fed.App'x 804, 805 (11th Cir. 2011).  Only after EEOC is in receipt of charges meeting EEOC's statutory and regulatory requirements is a charge filed.  *Id.*  At a minimum, a charge is sufficient when it is submitted under oath or affirmation, 42 U.S.C. § 2000(e)-5(b), and includes a written statement identifying the parties, if available the number of employees of the respondent employer, and a statement of facts including the dates and actions or practices complained of.  29 C.F.R. § 1601.12(a)-(b).

Defendant argues Plaintiff's charge was insufficient until February 2, 2007, two-hundred and seventy-five days after Plaintiff's alleged unlawful demotion took place. Defendant also argues Plaintiff's May 1, 2006 interaction with the EEOC is merely correspondence lacking the requisite information or verification to constitute an adequate charge. Disagreeing with Defendant, Plaintiff asserts her complaint was received by the EEOC in early May 2006 and considered a charge as a matter of law, for limitations purposes, when received.

Plaintiff relies on two documents. The first document is characterized as a formal complaint sent on May 1, 2006 identifying the employer, number of employees, and a statement of facts including what Plaintiff alleges are pertinent dates. (Doc. 12-1.) The second document, a letter from the EEOC dated May 24, 2006, confirms "receipt of an initial correspondence", requests that Plaintiff fill out a questionnaire, and states if the "questionnaire is not filled out completely, the processing of your (Plaintiff's) complaint may be delayed." (Doc. 12-2.)

In the Eleventh Circuit, courts take a "manifest-intent approach" when deciding whether Title VII correspondence with EEOC constitutes a charge. If a reasonable person would be convinced Plaintiff established a sound legal basis and intent for activating "the (administrative) machinery of EEOC" to remedy unlawful employment practices then it should be considered a charge. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1320 (11th Cir. 2001.) The manifest-intent approach ensures that once a plaintiff's intent is clear, the EEOC's inaction cannot alone impair her claim. *Id.*

Applying the manifest-intent approach here, there is sufficient evidence to find that Plaintiff met the required deadlines under EEOC's regulations within 180 days after she was demoted. Plaintiff's first letter is explicit in its intent to serve as a complaint and detailed enough for a reasonable person to at bare minimum understand relief was sought under Title VII. Although Plaintiff's May 1 charge was not properly verified, EEOC's regulations allow such defects to be cured and make clear that such amendments relate back to the date the initial charge was brought. 29 C.F.R. § 1601.12(b) ("A charge may be amended to cure

technical defects or omissions, including failure to verify the charge…. Such amendments… will relate back to the date the charge was first received.")

Accordingly, Defendant is not entitled to summary judgment based on its untimeliness claim.

**b. Collateral Estoppel Challenge to Plaintiff's Hostile Environment Claim**

Defendant also argues Plaintiff's hostile work environment claim should be barred under the collateral estoppel doctrine. Collateral estoppel is also referred to as issue preclusion, "whereby the re-litigation of an issue that has been previously litigated and decided is precluded." *Irwin v. U.S.*, 335 Fed. App'x. 821, 823 (11th Cir. 2009) (*citing Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000.) Invoking collateral estoppel requires four prerequisites in order to be satisfied:

(1) the issue at stake must be identical to the one involved in the prior proceedings;

(2) the issue must have been actually litigated in the prior proceeding;

(3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action; and

(4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* Equitable considerations are undoubtedly involved in a court's determination of whether collateral estoppel should apply. *Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989.) The party seeking to invoke collateral estoppel bears the burden of proving all the elements have been satisfied. *Id.*

The Court disagrees with Defendant's assertion Plaintiff's hostile work environment claim should be barred as a result of collateral estoppel. In *Aaron I* the issue before the Court in its Order considering Defendant's Motion for Summary Judgment was whether or not Defendant eliminated her position after Plaintiff filed an internal grievance with the EEOC. *Aaron I*, at 12. The Court's assessment in *Aaron I*, contrary to Defendant's

11

characterization, dealt with Plaintiff's retaliatory discharge and whether any hostility felt at work was objectively reasonable.  The issues at stake in *Aaron I* and the hostile work environment claim before the Court now are separate issues, far from identical. Furthermore, the settlement agreement between the Parties, the subject of the stipulation in *Aaron I*, differentiated itself from the claims within the instant complaint. (*See* Doc. 6-1, at 2.)

Accordingly, Defendant is not entitled to summary judgment based on its collateral estoppel argument.

### c.  Substantive Merits of Plaintiff's Claims

Defendant last argues Plaintiff is incapable of showing a *prima facie* case for her retaliation, sex discrimination, race discrimination, and hostile work environment claims. The Court will consider Defendant's challenge to each of Plaintiff's claims in turn.

### 1.  Plaintiff's Retaliation Claim

Plaintiff claims she was demoted by Defendant as retaliation for filing an employment discrimination complaint with the EEOC on May 1, 2006.  (Doc. 12 at 3.)  Attempting to refute Plaintiff's retaliation claim, Defendants argue Plaintiff fails to sufficiently prove retaliation under Title VII.

Under Title VII, it is unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter (Title VII), or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [42 U.S.C. § 2000e-3(a)]."  *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 956 (11th Cir. 1997) (*citing* 42 U.S.C. § 2000e-3(a)).  To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) suffered an adverse employment action; and (3) the adverse action was causally related to plaintiff's protected activities.  *Id.* at 959.  Once "a plaintiff establishes a *prima facie* case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. If the employer accomplishes this, the plaintiff bears the ultimate burden of proving by a

preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." *Jiles v. United Parcel Serv., Inc.*, 360 F. App'x. 62, 66 (11th Cir. 2010) (internal citations omitted).

Defendant does not contest the existence of a statutorily protected activity or an adverse employment action.  Filing an EEOC charge is a statutorily protected act and demoting an employee is the type of action which would certainly have an adverse effect.  *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006).  Instead, Defendant argues Plaintiff is unable to prove her statutorily protected activity was causally connected to her suffering an adverse employment action.  Defendant formally demoted Plaintiff on May 8, 2006, seven days after Plaintiff sent her complaint to the EEOC and filed her grievance with Grant. (Doc. 35-2, at ¶17-18.)  The closeness between Plaintiff reporting her discrimination and being demoted is enough to prove an adequate causal connection Plaintiff argues.

In order to satisfy the causal-link element for retaliation, "a plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citations omitted).  "A plaintiff satisfies this element if he provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse . . . action." *Id.* (internal quotations and citations omitted).  "A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a *prima facie* case." *Id.* (citation omitted).  The Supreme Court has made clear that for "mere temporal proximity" to be sufficient it "must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted). In *Higdon*, the Eleventh Circuit further held that "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." 393 F.3d at 1220.

Plaintiff fails to identify direct evidentiary support proving a causal connection and instead relies on the temporal proximity of her reporting to Grant and the EEOC with her

subsequent demotion.  After reviewing the evidentiary record liberally in Plaintiff's favor, her suggestion that the temporal proximity of seven days between her EEOC complaint and subsequent demotion, particularly considering Grant was aware of her dissatisfaction, seems sufficient to suggest retaliation. *See Hypolite v. City of Houston, Tex.*, 493 Fed.App'x. 597, 606 (5th Cir. 2012) (finding a temporal proximity of 2 months sufficient to establish a causal connection for *prima facie* case retaliation under Title VII.)

While Plaintiff, for purposes of summary judgment, has established a *prima facie* case for retaliation, Defendant still is entitled to summary judgment if Defendant proves it "would have made the same disputed employment decision" in absence of Plaintiff's reporting to EEOC on May 1, 2006. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir. 2001). Defendant submits a lengthy evidentiary record, in part admitted by Plaintiff, suggesting her transition from Director of OPI to another position at ASU was discussed long before her demotion. (*See* Doc. 35-2, at ¶ 10; Doc. 39, at ¶ 10.)  It is undisputed by both Parties that the working relationship between Plaintiff and Freeman was severely strained as a result of differences in expectation surrounding work.  Further, both Parties seemed to understand that it would be best to reassign Plaintiff rather than keep her in the position of Director. (*Id.; See also* Doc. 39, at ¶9.)  These facts set out a non-retaliatory rationale for Plaintiff's demotion rather than retaliation, shifting the burden to prove retaliation again to Plaintiff to present evidence that Defendant's rationale for her demotion was pretext for retaliation. *Id.*

"Disbelief of an employer's proffered reason, together with the employee's prima facie case" can be sufficient to show retaliation under Title VII. *Ferguson v. Georgia Dept. of Corrections*, 428 F.Supp.2d 1339, 1362 (M.D. Ga. 2006).  Where plaintiff is able to provide a sufficient evidentiary showing demonstrating the existence of a genuine issue of material fact as to the truth of employer's reason, Plaintiff is entitled to survive summary judgment. *Id.* Here, Plaintiff has not raised any credible factual challenges to Defendant's non-retaliatory reason for Plaintiff's demotion.  If anything, Plaintiff's depiction within her undisputed facts supports Defendant's non-retaliatory reason for her demotion by acknowledging the need

14

for a change in her employment position at ASU.  The Court finds that no genuine issue of material fact remains as to the reason for Plaintiff's demotion.

Accordingly, Defendants are entitled to summary judgment as it pertains to Plaintiff's retaliation claim.

### 2.  Plaintiff's Title VII Race and Sex Discrimination Claims

Plaintiff next contends she was discriminated against on the basis of her race and sex. Plaintiffs attempting to prove a Title VII discrimination violation may do so through three generally accepted methods: (1) direct evidence of discriminatory intent, (2) circumstantial evidence satisfying the burden-shirting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or (3) statistical proof.  *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).  Since Plaintiff offers no direct evidence or statistical proof to support her Title VII race and sex discrimination claims, the Court will review the circumstantial evidence within the burden-shifting framework established in *McDonnell Douglas Corp.  See Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1331 (11th Cir. 1998).  Under this framework, in order to establish a *prima facie* case of discrimination under Title VII, a plaintiff must show she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) show that similarly situated employees outside of her protected class were treated more favorably or were replaced by someone outside of her protected class.  *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000).  Only after the claimant establishes a *prima facie* case of discrimination, creating a presumption of discrimination, does the burden shift to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action to rebut the presumption.  *Standard*, 161 F.3d at 1331.

Plaintiff fails to provide a *prima facie* case for either race or sex discrimination because she fails to show that her male or Caucasian colleagues, particularly Fletcher, a white male, were similarly situated or treated more favorably in comparison. To show a plaintiff and colleagues are similarly situated requires similarities in all relevant aspects.  *Holifield v. Reno*,

115 F.3d 1555, 1562 (11th Cir. 1997).  Plaintiffs must show that the employee or employees they compare themselves with have very similar job-related characteristics and are in a similar situation in order to determine whether the plaintiff has been treated differently. *Wehunt v. R.W. Page Corp.*, 352 F.Supp.2d 1342, 1351 (M.D. Ga. 2004) (*citing MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991)).

Plaintiff unsuccessfully proffers several arguments in her attempt to create a corollary between her job position and actions with Fletcher's. First, Plaintiff within her complaint cites several arguments where it is clear the job related characteristics of her job and Fletcher's job were not similar. Specifically, Plaintiff cites a negative May 8, 2006 letter she received regarding excessive sick leave and compares it with notice received by Freeman on May 9, 2006 that Fletcher's sick leave was allegedly more days than Plaintiff's, noting Freeman did not react negatively at all. Plaintiff does not mention that at the time Freeman received this information, Fletcher and Plaintiff were far from similarly situated considering they had different job positions for most of the days sick leave was accrued.

Plaintiff also claims that the scrutiny she received as Director was different than Fletcher's treatment when making similar errors. Here, Plaintiff fails to establish that the "quantity and quality" of Fletcher's errors were close to identical to those Plaintiff was allegedly scrutinized for.  *Johnson v. Miller Brewing Co.*, 341 F. App'x 477, 478 (11th Cir. 2009) (*quoting Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006)). While Plaintiff points to typographical errors both she and Fletcher made, any discipline Plaintiff allegedly received, even her demotion, resulted from a number of instances the evidence does not show Fletcher experienced.  Plaintiff points out no   Over the course of months, Plaintiff engaged in a tense relationship with Freeman, creating a relationship entirely different than Freeman's relationship with Fletcher.  Considering the Record in full, Plaintiff has failed to establish a similarly situated employee outside of her protected class in quantity or quality exists.

Accordingly, Defendant is entitled to summary judgment as it relates to Plaintiff's sex and race discrimination claims.

### 3.  Plaintiff's Hostile Work Environment Claim

Plaintiff also alleges she was subject to a hostile work environment on the basis of race and sex.  "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  Title VII is not meant to serve as "a general civility code." *Satchel v. Sch. Bd. of Hillsborough Cnty.*, 251 F. App'x 626, 630 (11th Cir. 2007) (*citing Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).  As such, to prove a prima facie case of hostile work environment, a plaintiff must establish that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based upon a protected characteristic (here, race and gender); (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for said environment under either a theory of direct or vicarious liability.  *Miller*, 277 F.3d at 1275.

Plaintiff fails to establish a *prima facie* case for a hostile work environment claim under Title VII.  Plaintiff, while offering evidence she is part of a protected group, and noting a few instances of what she contends was unwelcome harassment, is unable to show that such harassment was based on her race or gender.  Without an evidentiary basis, finding harassment on the basis of gender or race is impossible since the Court has nothing to evaluate.  *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999); *see also Wheatfall v. Board of Regents University System of Georgia*, No. 1:12-cv-922-TCB, 2014 WL 1274036 (N.D. Ga. Mar. 31, 2014) (Noting that in reviewing a hostile work environment claim "without specifics… a hypothetical reasonable person has nothing to evaluate.").  The Record before the Court is wholly inadequate to establish a claim for hostile work environment.

Accordingly, Defendant is entitled to summary judgment as to Plaintiff's hostile work environment claim.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Strike (Doc. 53) is **DENIED**.  Defendant's Motion for Summary Judgment (Doc. 35) is **GRANTED**. It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by his Complaint (Doc. 12), and **JUDGMENT** shall be entered in favor of Defendant.

**SO ORDERED**, this   30th   day of September, 2014.

/s/ W. Louis Sands

**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**

18